UNITED STATES DISTRICT COURT  FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x

THOMAS MURPHY,

      Plaintiff,      MEMORANDUM
                AND ORDER
                07-CV-3582 (JG)
  -against-

MICHAEL J. ASTRUE, COMMISSIONER
OF SOCIAL SECURITY,

      Defendant.
----------------------------------------------------------x
A P P E A R A N C E S :

  BINDER AND BINDER, P.C.
    215 Park Avenue South, 6th Floor
    New York, NY 10003
  By: Charles E. Binder
    Jeannine LaPlace
    Attorneys for Plaintiff

  BENTON J. CAMPBELL
    United States Attorney
    Eastern District of New York
    271 Cadman Plaza East
    Brooklyn, NY 11201
  By: Susan L. Riley
    Attorney for Defendant

JOHN GLEESON, United States District Judge:

    Thomas Murphy brings this action under 42 U.S.C. § 405(g), seeking review of the Commissioner's determination that he is not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423. The parties cross-move for judgment on the pleadings. For the reasons that follow, the Commissioner's motion is denied and Murphy's motion is granted to the extent that the case is remanded to the Commissioner for a new hearing.

BACKGROUND

A.   *Murphy's Testimony*[1]

Murphy was a 44-year-old police officer at the alleged onset of his disability on March 3, 2003. R. 67, 71, 76, 369. Prior to that date, Murphy began to develop frequent upper respiratory infections and asthma, leading his sergeant to recommend he no longer perform patrol but instead work in an office. *Id.* at 370-71. Murphy did not want to accept an office job and felt forced into retirement, and testified that he would not have been able to continue his patrol job in any event due to his asthma as well as depression, panic attacks, a sleep disorder, and adverse side effects of his medication. *Id.* at 373-74. Murphy retired on March 3, 2003. *Id.* at 370-71.

Murphy indicated that he took care of his own hygiene and personal grooming, cared for his daughter and pets, and did occasional grocery shopping. *Id.* at 93-97. However, he does not drive, due both to the side effects of his medication and to his fear of having a panic attack while driving, *id.* at 375, he seldom socializes, and he rarely leaves his house, *id.* at 96.

B.   *The Medical Evidence*[2]

Dr. Narendra Patel has been Murphy's treating psychiatrist since 1996, when Murphy first saw him due to a panic disorder. R. at 286. Following the terrorist attacks of September 11, 2001, Murphy began to complain of irritability and "mild panic attacks" twice a day, along with "numbness" and depression due to the deaths of fellow police officers in the attacks. *Id.* at 325-27.

---

[1] The facts in this section are drawn from Murphy's application for disability insurance benefits and his testimony at a benefit eligibility hearing held before Administrative Law Judge ("ALJ") Newton Greenberg on December 7, 2005.

[2] As Murphy does not challenge the ALJ's findings with respect to any of his physical impairments, there is no need to recite the medical testimony relating to his asthma and sleep apnea.

By July of 2002, he was sleeping better and had no panic attacks, but he had difficulties with his relationship with his wife. *Id.* at 328. In August of 2002, he was anxious regarding his planned retirement in February of 2003. *Id.* In January and February of 2003, he again expressed anxiety about his retirement, which was pushed back to April, and he described trying to make plans for his future, including possibly going to law school or performing construction work. *Id.* at 330.

From April through September of 2003, Murphy told Dr. Patel that he was working 10-12 hours a day in construction six days a week; was building a new home and selling his old home; and was experiencing no panic attacks. *Id.* at 332-33. In June of 2003 he reported being "cheerful" and sleeping from 9 PM to 7 AM, and Dr. Patel discussed with Murphy the possibility of euphoria being followed by an episode of depression. *Id.* at 330. In November of 2003, Murphy reported having fallen while riding a dirt bike. *Id.* at 333. In December of 2003, Dr. Patel observed that Murphy's mood was stable. *Id.*

On February 23, 2004, Murphy reported that his nephew, who was named after him and was also a police officer, had killed himself, causing Murphy to be sad but not suicidal. *Id.* at 334. In May of 2004, Murphy reported that for periods of two to three days he felt like isolating himself and had decreased motivation and drive, but that those periods were followed by periods of increased energy and motivation, during which he functioned well. *Id.* In June of 2004, Dr. Patel discontinued the antidepressant Lamictal due to Murphy's complaints of headaches, and Murphy reported episodic depression but no panic attacks. *Id.* at 335.

On June 18, 2004, consultative psychologist Dr. Alan Dubro, Ph.D. examined Murphy at the request of the state agency. *Id.* at 187-91. Dr. Dubro determined that Murphy

3

was fully oriented, with adequate social skills and overall presentation, though he found Murphy had a slouched posture; lethargic behavior; a soft tone of speech, which was mumbled; a depressed and anxious mood; a flat affect; and moderately impaired attention and concentration due to anxiety and depression. *Id.* at 189. Murphy reported poor sleep with nightmares and anxiety-related shortness of breath, as well as little motivation to complete household tasks. *Id.* at 188-89. Dr. Dubro diagnosed Murphy with post-traumatic stress disorder due to the September 11, 2001 terrorist attacks. He found Murphy to be capable of understanding and following simple instructions and of learning new tasks to a limited extent, but unable to perform tasks independently (due to lack of motivation), to maintain attention and concentration for more than short periods of time, or to regularly attend a routine or maintain a schedule. *Id.* at 190. He also noted that Murphy had limited ability to interact appropriately with others, that he was having "significant difficulty dealing with stress," and that he might need assistance managing his money due to concentration difficulties. *Id.*

In July of 2004, Murphy saw Dr. Patel and complained of a conflict in his relationship with his wife due to her continuing to work full-time, but Murphy reported he had not had any panic attacks, and Dr. Patel observed that his mood was stable. *Id.* at 335.

On August 30, 2004, Dr. George Wing, a state agency psychiatric consultant, reviewed the record evidence and concluded that Murphy's post-traumatic stress disorder did not meet or equal the conditions set forth in the Listings of Impairments set forth in Appendix 1 to Subpart P of Part 404 of the Social Security Administration's regulations, 20 C.F.R. pt. 404, subpt. P, app. 1. R. 213, 218. Dr. Wing found that Murphy was moderately limited in his abilities to understand, remember, and carry out detailed instructions; to maintain attention and

4

concentration for extended periods; to perform activities within a schedule; to maintain regular attendance and be punctual; to sustain an ordinary routine without special supervision; to work in coordination or proximity with others without being distracted; to complete a normal workday and workweek and perform at a consistent pace without unreasonably long or frequent rest periods; to interact appropriately with the general public; to respond appropriately to criticism; to get along with coworkers and peers; to travel to unfamiliar places and use public transportation; and to set realistic goals or plans independently. R. 227-28. In addition to the above findings, Dr. Wing added that Murphy was moderately limited in his ability "to understand, remember and carry out simple instructions; to concentrate for up to two hours at a time; to relate appropriately to supervisors and coworkers; and to adapt to changes in the work environment." *Id.* at 229. Dr. Wing found Murphy able to perform simple tasks, *id.* at 229, and noted that he had no repeated episodes of deterioration, *id.* at 223.

In August 2004, Dr. Patel again saw Murphy and found his mood to be stable. *Id.* at 335. In November 2004, Murphy claimed to be functioning well but not feeling well, and reported losing his temper with a kitchen cabinet salesperson. *Id.* at 336. In December of 2004, Murphy complained of decreased energy and drive, and reported being busy going to the construction site of his new house every day. *Id.*

In January of 2005, Murphy reported thoughts of death and fear of dying to Dr. Patel, but he did not have suicidal thoughts. *Id.* at 337. In March his mood was tranquil with no suicidal thoughts, *id.*, but in April he reported feeling "grouchy," anhedonic,[3] and unstable, with

---

[3] Anhedonia is the "[a]bsence of pleasure from the performance of acts that would ordinarily be pleasurable." WebMD, *Stedman's Medical Dictionary* (28th ed. 2006).

no energy or drive. *Id.* In June of 2005, Murphy reported experiencing only short "spurts of energy" before becoming fatigued and returning to bed. *Id.* at 339.

In August of 2005, Murphy reported to Dr. Patel that he was concerned about his daughter's safety due to her separation from him by studying in Miami. *Id.* at 339. On October 17, 2005, Murphy reported having negative thoughts and experiencing poor sleep and little motivation, and Dr. Patel found him to have a depressed mood. *Id.* at 340. In November, Murphy reported traveling from New York to Miami to bring his daughter back home due to a storm in Florida. *Id.* at 341.

C.  *The Procedural History*

On April 29, 2004, Murphy applied for disability insurance benefits. R. 67-69. The application was denied, and he requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* at 59-63. The hearing was held on December 7, 2005 before ALJ Newton Greenberg. *Id.* at 367-79. ALJ Greenberg rejected Murphy's claim for disability insurance benefits by written decision issued on March 2, 2006. *Id.* at 42-49.

The ALJ found that Murphy's mental disorders were severe but did not meet or equal the conditions in the Listings of Impairments.[4] *Id.* at 44. He found, based on Dr. Dubro's report, which he interpreted to be consistent with the records kept by Dr. Patel and the findings of Dr. Wing, that Murphy was precluded from "mentally or emotionally stressful or demanding" jobs. *Id.* at 47. On the strength of Murphy's trip to Florida to pick up his daughter, the ALJ rejected Dr. Patel's clinical finding that Murphy lacked energy and motivation. *Id.* The ALJ found that Murphy's mental limitations prevented him from performing past relevant work as a

---

[4] The ALJ also found that Murphy's asthma was severe and limited him to exertionally "light" work, but did not meet or equal the conditions contained in the Listings of Impairments and did not preclude him from performing his past work. *Id.* at 45-46. Murphy does not challenge this determination.

police officer. *Id.* However, he found that Murphy was not disabled based on the Medical-Vocational Guidelines of Appendix 2 of Subpart F of the Social Security Administration's regulations (the "Vocational Guidelines"), 20 C.F.R. pt. 404, subpt. P, app. 2. R. 47.

Murphy appealed the ALJ's decision and submitted additional medical evidence regarding his pulmonary condition. R. 11, 343-66. On June 23, 2007, the Appeals Council denied Murphy's request to review the ALJ's decision, making it the final decision of the Commissioner.

## DISCUSSION

A.   *The Legal Standard*

Under 42 U.S.C. § 405(g), I review the Commissioner's decision to determine whether it was "'supported by substantial evidence in the record as a whole or [was] based upon an erroneous legal standard.'" *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997)). In deciding whether the Commissioner's conclusions are supported by substantial evidence, a reviewing court must "first satisfy [itself] that the claimant has had 'a full hearing under the Secretary's regulations and in accordance with the beneficent purpose of the Act.'" *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir 1982) (quoting *Gold v. Sec'y of Health, Educ. & Welfare*, 463 F.2d 38, 43 (2d Cir. 1972)).

Under the Social Security Act, Murphy is entitled to disability insurance benefits if, "by reason of [a] medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," 42 U.S.C. § 423(d)(1)(A), he "is not only unable to do his previous work but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy," § 423(d)(2)(A). The Commissioner decides whether the claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1527(e)(1).

The Social Security Administration's regulations break down the inquiry into a five-step process:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*DeChirico v. Callahan*, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (internal quotation marks, brackets, and ellipsis omitted) (quoting *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)); *see also* 20 C.F.R. § 404.1520(a)(4)(i)-(v) (setting forth this process).

B.  *The ALJ's Decision*

Murphy raises two objections to the ALJ's decision. First, he claims that the ALJ's decision that his only mental limitation was an inability to perform "mentally or emotionally stressful or demanding jobs" was based on an improper disregard of uncontradicted medical opinion that he was also limited in his motivation and energy to perform simple or

8

complex tasks, in his ability to maintain attention and concentration for more than short periods of time, and in his ability to regularly attend a routine and maintain a schedule. Second, he claims that even if the ALJ properly assessed his mental limitations, the ALJ inappropriately relied solely on the Vocational Guidelines to determine whether Murphy was able to perform work existing in the national economy instead of soliciting vocational expert testimony to determine the existence of jobs accommodating Murphy's mental limitations. As I agree with Murphy's first objection, I need not address the second.

In finding that Murphy's only mental limitation was the inability to perform "mentally or emotionally stressful or demanding jobs," R. 47; *see also id.* at 44 (similar), the ALJ ignored relevant and probative evidence that Murphy suffered other mental limitations. The ALJ neither adopted nor rejected Dr. Dubro's findings that Murphy was unable to maintain attention and concentration for more than short periods of time or to regularly attend a routine or maintain a schedule, *id.* at 190, or Dr. Wing's findings that Murphy was moderately limited in his abilities to maintain attention and concentration for extended periods, to perform activities within a schedule, to sustain an ordinary routine without special supervision, and to complete a normal workday and workweek, *id.* at 227-28.[5] As Dr. Patel did not opine on Murphy's functional capacity, these findings are uncontradicted by any medical evidence.

Although Dr. Dubro's and Dr. Wang's findings were not from a treating source, they were still probative and relevant. *Cf., e.g.*, *Carrington v. Barnhart*, No. 04-CV-5187 (JGK), 2005 WL 2738940, at *9 n.2 (S.D.N.Y. Oct. 19, 2005) ("A report of a consultative physician may constitute substantial evidence in support of an ALJ's opinion." (citing *Mongeur v.*

---

[5] The ALJ did summarize these findings in a way that did not signify any disagreement with them, but inexplicably failed to either reject or adopt these findings that Murphy was subject to more mental limitations than a mere inability to perform stressful jobs. *Id.* at 46-47.

*Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983))). Therefore, it was error for the ALJ to simply disregard these findings instead of adopting or rejecting them. *See, e.g.*, *Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 289 (E.D.N.Y. 2004) ("The ALJ must consider the entire record in accordance with his duty under 20 C.F.R. [§] 404.1520(3). It is not proper for the ALJ to simply pick and choose from the transcript only such evidence as supports his determination, without affording consideration to evidence supporting the plaintiff's claims. It is grounds for remand for the ALJ to ignore parts of the record that are probative of the plaintiff's disability claim."); *see also Lopez v. Sec'y of Dep't of Health & Human Servs.*, 728 F.2d 148, 150-51 (2d Cir. 1984) ("We have remanded cases when it appears that the ALJ has failed to consider relevant and probative evidence which is available to him.").[6]

Accordingly, remand is warranted. However, the conclusion that Murphy is disabled is not inescapable, and therefore it would be inappropriate to remand the case purely for the calculation of benefits. *See, e.g.*, *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980) ("When there are gaps in the administrative record or the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the Secretary for further development of the evidence. On the other hand, we have reversed and ordered that benefits be paid when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." (citations omitted)).

---

[6] The ALJ rejected Dr. Dubro's findings that Murphy was unable to perform tasks independently due to lack of motivation, citing as contrary evidence his trip to Florida to bring his daughter out of the path of a storm. R. 47. Murphy complains that this single incident was not sufficient to undermine Dr. Dubro's findings. As remand is warranted by the ALJ's failure either to adopt or reject Dr. Dubro's and Dr. Wing's other findings, I need not reach this issue.

CONCLUSION

The Commissioner's motion for judgment on the pleadings is denied in its entirety. Murphy's cross-motion is granted to the extent that the case is remanded to the Commissioner for a new hearing.

So ordered.

John Gleeson, U.S.D.J.

Dated: April 10, 2008
      Brooklyn, New York